1  David W. Lunn (#019526) / dlunn@polsinelli.com
   Kathryn A. Smetana (#0207619) / ksmetana@polsinelli.com
2  **POLSINELLI SHUGHART PC**
   Security Title Plaza
3  3636 N. Central Ave., Suite 1200
   Phoenix, AZ 85012
4  Phone: (602) 650-2000
   Fax: (602) 264-7033
5  Attorneys for Plaintiff/Counterdefendant A. Miner Contracting, Inc.

6              **IN THE UNITED STATES DISTRICT COURT**

7            **FOR THE DISTRICT OF DISTRICT OF ARIZONA**

8  | A. MINER CONTRACTING, INC., an | CASE NO. 3:10-CV-08083-PHX-NVW |
9  | Arizona corporation, | |
   | | **PLAINTIFF A. MINER** |
10 | Plaintiff, | **CONTRACTING, INC.'S FIRST** |
   | | **AMENDED COMPLAINT** |
11 | vs. | |
12 | | |
   | DANA KEPNER COMPANY, INC., a | (Assigned to the Honorable |
13 | Delaware corporation; AMERICAN CAST | Neil V. Wake) |
14 | IRON PIPE COMPANY, a Georgia | |
   | corporation; DOES 1-50; BLACK & WHITE | |
15 | COMPANIES; LIMITED LIABILITY | |
   | COMPANIES OR PARTNERSHIPS I-X, | |
16 | | |
17 | Defendants. | |
18 | DANA KEPNER COMPANY, INC., a | |
   | Delaware corporation, | |
19 | | |
20 | Counterclaimant, | |
21 | vs. | |
22 | | |
   | A. MINER CONTRACTING, INC., an | |
23 | Arizona corporation, | |
24 | | |
   | Counterdefendant. | |
25 | | |

26
27
28

2737068.1                                                  061875-412456

1  DANA KEPNER COMPANY, INC., a
   Delaware corporation,
2
3                          Third-Party-Plaintiff,

4        vs.

5  THE GUARANTEE COMPANY OF
   NORTH AMERICA,
6
7                          Third-Party-Defendant.

8

9        For its First Amended Complaint against Defendants, Plaintiff A. Miner

10 Contracting, Inc. alleges:

11                    **PARTIES, JURISDICTION AND VENUE**

12       1.    Plaintiff A. Miner Contracting, Inc. ("A. Miner" or "Plaintiff") is an

13 Arizona corporation with its principal place of business in Prescott, Arizona.

14       2.    Defendant Dana Kepner Company, Inc., ("Kepner") is a Denver

15 Corporation that is qualified to conduct business in Arizona.

16       3.    Defendant American Cast Iron Pipe Company dba American Ductile Iron

17 Pipe ("ACIPCO"), is a Georgia corporation, with its principal place of business in

18 Birmingham, Alabama, and is qualified to conduct business in Arizona.

19       4.    Defendants Does 1-50, Black Corporations, Limited Liability Companies

20 or Partnerships I-X are fictitious Defendants whose true names or capacities, whether

21 individual, corporate, associate or otherwise, are unknown to Plaintiff at this time.

22 Plaintiff therefore sues the Defendants by such fictitious names and will ask leave of the

23 Court to amend this Complaint when their true names and capacities become known.

24       5.    All Defendants have individually caused events to occur in Yavapai

25 County, Arizona.

26       6.    The amount in controversy exceeds the minimum jurisdiction and limits

27 of this Court.

28

2

2737068.1                                                    061875-412456

7.     Venue is proper in Yavapai County, Arizona, because the events that give rise to Plaintiff's causes of action occurred in Yavapai County, and Defendants provided products to Prescott, Arizona to be used on two projects located in Prescott, Yavapai, County, Arizona.

## FACTUAL BACKGROUND

8.     On March 24, 2009, A. Miner was awarded the Zone-39 Project by the City of Prescott.  The contract for the Zone-39 Project provided that A. Miner would perform certain installations of 6, 8, 12, 16 and 20 inch Ductile Iron Water Mains, including a Pump Station involving four large pumps, controls, back-up generator and a complete building.

9.     Kepner submitted a bid proposal to A. Miner to provide all of the necessary pipe and appurtenances for the Zone-39 Project.  The amount of that proposal was $797,120.72.  A true and correct copy of the proposal in attached hereto as Exhibit "A".

10.     On March 23, 2009, immediately prior to being awarded the Zone-39 Project, Mr. Miner met with Kepner representative Steve Huse and with Joe Bacik, the Arizona representative of ACIPCO, to discuss the quality and suitability of ACIPCO's pipes for the Zone-39 Project.  During that meeting both Mr. Huse and Mr. Bacik represented that the ACIPCO pipe was suitable for the Zone-39 Project and that there were no previous negative issues relating to the use of ACIPCO's products.

11.     The representations of Mr. Huse and Mr. Bacik were critical to A. Miner. Mr. Miner knew, as did Mr. Huse and Mr. Bacik, that the subject Zone-39 Project was a high-profile project in the City of Prescott.  The work to be performed by A. Miner was not located in a rural location.  Instead, the work was to be performed on major streets within the City of Prescott.  Mr. Huse and Mr. Bacik confirmed that the ACIPCO pipe was suitable for the Zone-39 Project.

2737068.1                                                                                          061875-412456

1

**Problems With 12-Inch American Ductile Pipe**

2   12.   Much to Mr. Miner's surprise, it was unusually difficult to assemble the
3   ACIPCO pipe.  None of the pipe could be put together manually or with the use of a pry
4   bar or come-along, nor could any of the pipe be pulled together with a choker.  All of
5   the pipe was hydraulically pushed or pulled together with an excavator or backhoe at the
6   Bell with a block between the backhoe bucket and the Bell to prevent damage to the
7   Bell.

8   13.   In early October 2009, hydrostatic testing of the 12-inch ACIPCO pipe
9   revealed numerous leaks.  A. Miner soon discovered rolled rubbers between the Bell
10  and Spigot were the cause of numerous leaks.

11  14.   Within thirty (30) days after Mr. Miner discovered the cause of the
12  numerous leaks he advised Kepner and ACIPCO of the leak issues.  As a result of that
13  claim, ACIPCO requested that the subject joints be sent to Birmingham, Alabama for
14  analysis.  On December 2, 2009, Mr. Miner and Mr. Huse traveled to Birmingham,
15  Alabama to attend the December 3, 2009 inspection and testing of the defective pipe.

16  15.   The testing was done under laboratory conditions that were in no way
17  similar to field conditions.  Despite ACIPCO's best efforts to demonstrate that its pipe
18  was not defective, the pipe failed under the best of conditions.

19  16.   As a direct and proximate result of the defective 12-inch pipe, it cost A.
20  Miner an additional $42,138.65 to repair the leaks.

21

**Problems With 16-Inch And 20-Inch ACIPCO Pipe**

22  17.   Thereafter A. Miner began testing the 20-inch main line pipe.  A. Miner
23  discovered the same problem.  There were rolled gaskets starting with station 82+40 on
24  Aubrey Street, then station 93+60 on Aubrey Street and Pleasant Street.   On
25  Hassayampa Drive at station 47+81, A. Miner found a defective 16-inch pipe.  The cost
26  to repair those leaks was $49,936.75.

27

28

2737068.1                                                          061875-412456

1    18.    Another leak was finally found on the 20-inch main line at the end Aubrey

2  at station 64+60.  It took over 40 man hours to locate and repair that leak at a cost of

3  $19,499.99.

4    19.    At ACIPCO's demand, the defective 16-inch and 20-inch joints were sent

5  back to ACIPCO for testing.   Again, the testing was done under ideal laboratory

6  conditions that in no way reflected how those pipes are actually assembled in the field.

7  It is indisputable; those pipes failed on the Zone-39 Project in the same exact way the

8  12-inch pipe also failed.

9    20.    On about March 31, 2010, Kepner served a Verified Statement of Claim

10  ("Zone-39 Claim") in connection with the Zone-39 Project.

11  **Kepner's And ACIPCO's Prior Knowledge That Pipes Were Defective**

12    21.    Although Kepner's representatives and ACIPCO's representatives assured

13  Mr. Miner that they had no knowledge of any defects in ACIPCO's pipes, A. Miner has

14  learned that Mr. Huse's and Mr. Bacik's assurances were not true.

15    22.    Mr. Huse had previously supplied similarly defective ACIPCO pipe to

16  Arizona Earth Movers of Prescott in connection with the Pronghorn Ranch project in

17  Prescott Valley.   Kepner and ACIPCO had knowledge of previous occasions when

18  ACIPCO's pipes failed much, if not exactly like, how they failed on the Zone-39

19  Project.

20  **Kepner Wrongfully Refuses To Fulfill Obligations At Groom Creek Project**

21    23.    As a direct result of the Zone-39 Project dispute, Kepner arbitrarily

22  decided to stop all business with A. Miner, including the Groom Creek Water Users

23  Association Distribution System Upgrade Project (the "Groom Creek Project").  Kepner

24  did so despite its obligation to provide material for the Groom Creek Project.  A. Miner

25  was forced to start buying all of its material from other suppliers for the Groom Creek

26  Project as of April 1, 2010.

27    24.    When Kepner refused to provide materials at the Groom Creek Project, A.

28  Miner was current with all of its financial obligations with respect to that project.

5

2737068.1                                                              061875-412456

1  However, Kepner served a Verified Statement of Claim (the "Groom Creek Claim") in
2  connection with the Groom Creek Project.

3       25.    When Kepner immediately, and without notice, refused to provide any
4  materials to A. Miner's employees, Mr. Miner had to immediately contact another
5  supplier to obtain the necessary materials to continue working on the Groom Creek
6  Claim.  The materials provided by the replacement supplier cost more than the amount
7  that A. Miner had agreed to pay Kepner for the same materials.

8       26.    Kepner's actions caused the Groom Creek Project to be delayed.
9  Kepner's wrongful actions effectively caused a shutdown of the Groom Creek Project
10 for nine (9) days.

11      27.    As a direct and proximate result of Kepner's wrongful conduct, A. Miner
12 has incurred damages in the amount of at least $69,798.68.

13                                   **FIRST CAUSE OF ACTION**

14                           **(Declaratory Judgment – Against Kepner)**

15      28.    A. Miner incorporates the allegations in paragraphs 1 through 27 as
16 though fully set forth herein.

17      29.    A dispute has arisen between A. Miner and Kepner regarding whether A.
18 Miner has the right to deduct all or any part of the damages resulting from any breach of
19 contract from any part of the price still due under the purchase agreement between A.
20 Miner and Kepner.  Additionally, a dispute exists to whether the two Verified Statement
21 of Claims are proper and/or enforceable.

22      30.    A judiciable controversy has arisen between the parties within the
23 meaning of A.R.S. § 12-1841.

24      31.    A. Miner has standing to seek a declaration of this Court as to determine
25 the parties' rights under the agreements between A. Miner and Kepner.

26

27

28

2737068.1                                              061875-412456

### SECOND CAUSE OF ACTION

#### (Breach of Zone-39 Project Contract – Against Kepner)

32.    A. Miner incorporates the allegations in paragraphs 1 through 31 as though fully set forth herein.

33.    Kepner submitted a bid proposal (the "Zone-39 Agreement") to A. Miner in connection with the Zone-39 Project.  A. Miner accepted Kepner' bid proposal.

34.    Pursuant to the Zone-39 Agreement, Kepner agreed to provide suitable materials to A. Miner for use at the Zone-39 Project.  Kepner materially breached that agreement by providing defective products to A. Miner.

35.    Kepner also materially breached the Zone-39 Agreement by failing to deliver all products it was obligated to deliver to A. Miner.

36.    As a direct and proximate result of Kepner's material breach of the Zone-39 Agreement, A. Miner has sustained damages in the minimum amount of $350,000.

37.    Because A. Miner's claim arises out of contract, it is entitled to recover its attorneys' fees and costs pursuant to A.R.S. § 12-341.01.

### THIRD CAUSE OF ACTION

#### (Breach of Covenant of Good Faith and Fair Dealing

#### Zone-39 Project – Against Kepner)

38.    A. Miner incorporates the allegations in paragraphs 1 through 37 as though fully set forth herein.

39.    The law implies a covenant of good faith and fair dealing in all contracts.

40.    Kepner owed a duty of good faith and fair dealing to A. Miner in its discharge of its obligations under the Zone-39 Agreement.

41.    Kepner failed to honor its obligations to act in good faith and fair dealing.

42.    As a direct and proximate result of Kepner's material breach of the covenant of good faith and fair dealing, A. Miner has sustained damages in the minimum amount of $350,000.

7

1    43.    Because A. Miner's claim arises out of contract, it is entitled to recover its

2    attorneys' fees and costs pursuant to A.R.S. § 12-341.01.

3                          **FOURTH CAUSE OF ACTION**

4              **(Breach of Groom Creek Project Contract – Against Kepner)**

5    44.    A. Miner incorporates the allegations in paragraphs 1 through 43 as

6    though fully set forth herein.

7    45.    Kepner submitted a bid proposal (the "Groom Creek Agreement") to A.

8    Miner in connection with the Groom Creek Project.    A true and correct copy of the

9    Groom Creek Agreement is attached hereto as Exhibit "B".  A. Miner accepted Kepner'

10   bid proposal.

11   46.    Pursuant to the Groom Creek Agreement, Kepner agreed to provide

12   certain materials to A. Miner for use at the Groom Creek Project.  Kepner materially

13   breached the Groom Creek Agreement by failing to deliver all products it was obligated

14   to deliver to A. Miner.

15   47.    As a direct and proximate result of Kepner's material breach of the Groom

16   Creek Agreement, A. Miner has already sustained damages in the minimum amount of

17   $69,000.

18   48.    Because A. Miner's claim arises out of contract, it is entitled to recover its

19   attorneys' fees and costs pursuant to A.R.S. § 12-341.01.

20                           **FIFTH CAUSE OF ACTION**

21              **(Breach of Covenant of Good Faith and Fair Dealing**

22                 **Groom Creek Project – Against Kepner)**

23   49.    A. Miner incorporates the allegations in paragraphs 1 through 48 as

24   though fully set forth herein.

25   50.    The law implies a covenant of good faith and fair dealing in all contracts.

26   51.    Kepner owed a duty of good faith and fair dealing to A. Miner in its

27   discharge of its obligations under the Groom Creek Agreement.

28   52.    Kepner failed to honor its obligations to act in good faith and fair dealing.

2737068.1                                                              061875-412456

53.    As a direct and proximate result of Kepner's material breach of the covenant of good faith and fair dealing, A. Miner has sustained damages in the minimum amount of $69,000.

54.    Because A. Miner's claim arises out of contract, it is entitled to recover its attorneys' fees and costs pursuant to A.R.S. § 12-341.01.

## SIXTH CAUSE OF ACTION

### (Breach of Implied Warranty of Usage of Trade

### Zone-39 Project – Against All Defendants)

55.    A. Miner incorporates the allegations in paragraphs 1 through 54 as though fully set forth herein.

56.    Pursuant to A.R.S. § 47-2105, the pipes supplied by Defendants to A. Miner are goods, and therefore, are subject to the provision of the Uniform Commercial Code.

57.    Defendants breached the implied warranty of usage of trade (A.R.S. § 47-2314(B)(3)) because the goods they provided were defective.

58.    As a direct and proximate result of Defendants' breach of the implied warranty of usage of trade, A. Miner has sustained damages in the minimum amount of $350,000.

59    Additionally, as set forth in A.R.S. § 47-2717, A. Miner is entitled to "deduct all or any part of the damages resulting from any breach of contract from any part of the price still due under the same contract."

## SEVENTH CAUSE OF ACTION

### (Breach of Implied Warranty Re Fitness for Particular Purpose

### Zone-39 Project – Against All Defendants)

60.    A. Miner incorporates the allegations in paragraphs 1 through 59 as though fully set forth herein.

9

2737068.1                                                                061875-412456

61.    Pursuant to A.R.S. § 47-2105, the pipes supplied by Defendants to A. Miner are goods, and therefore, are subject to the provision of the Uniform Commercial Code.

62.    Defendants breached the implied warranty of re fitness for a particular purpose (A.R.S. § 47-2315) because the goods they provided were defective and, thus, were not fit for the purpose for which they were purchased.

63.    As a direct and proximate result of Defendants' breach of the implied warranty re fitness for a particular purpose, A. Miner has sustained damages in the minimum amount of $350,000.

64.    Additionally, as set forth in A.R.S. § 47-2717, A. Miner is entitled to "deduct all or any part of the damages resulting from any breach of contract from any part of the price still due under the same contract."

## EIGHTH CAUSE OF ACTION

### (Fraudulent Inducement - Zone-39 Project – Against All Defendants)

65.    A. Miner incorporates the allegations in paragraphs 1 through 64 as though fully set forth herein.

66.    On March 23, 2009, Kepner representative Steve Huse, and ACIPCO representative Joe Bacik, knowingly made false statements to A. Miner about the quality and suitability of ACIPCO's materials for the Zone-39 Project. Both Mr. Huse and Mr. Bacik told A. Miner that the ACIPCO pipe was suitable for the Zone-39 Project and led A. Miner to believe that there were no previous negative issues relating to the use of ACIPCO's products, when both Mr. Huse and Mr. Bacik knew that the pipe was unsuitable for the Zone-39 Project and that there had been several instances of the ACIPCO pipe failing just as it did on the Zone-39 Project.

67.    Mr. Huse had previously supplied similarly defective ACIPCO pipe to Arizona Earth Movers of Prescott in connection with the Pronghorn Ranch project in Prescott Valley. Kepner and ACIPCO had knowledge of previous occasions when

2737068.1                                                                    061875-412456

1  ACIPCO's pipes failed much, if not exactly, like how they failed on the Zone-39
2  Project.

3       68.    Defendants made the false assurances to A. Miner about the quality and
4  suitability of the ACIPCO pipe intending for A. Miner to act in reliance on Defendants'
5  representations and to purchase, assemble, and install the ACIPCO pipe on the Zone-39
6  Project.

7       69.    A. Miner justifiably relied on the Defendants' false representations to its
8  detriment.

9       70.    As a direct and proximate result of Defendants' intentional
10  misrepresentations about the quality of the ACIPCO materials, A. Miner purchased,
11  assembled, and installed the pipe, which then failed throughout the Zone-39 Project, and
12  A. Miner has sustained damages as a result in the minimum amount of $350,000.

13       71.    Defendants acted intentionally and without regard to the interests of A.
14  Miner by their intentional misrepresentations and omissions, thereby defrauding A.
15  Miner. The acts of Defendants were malicious and guided by an evil hand, warranting
16  the imposition of punitive damages.

17  ### NINTH CAUSE OF ACTION

18  **(Negligent Misrepresentation- Zone-39 Project – Against All Defendants)**

19       72.    A. Miner incorporates the allegations in paragraphs 1 through 71 as
20  though fully set forth herein.

21       73.    Defendants knew or should have known, at least as of March 23, 2009,
22  that ACIPCO's materials were unsuitable for the Zone-39 Project, and that the pipe had
23  failed under similar circumstances in the past.

24       74.    Defendants had a duty to inform A. Miner at least as of March 23, 2009,
25  that the proposed materials were unsuitable for the Zone-39 project, and to inform A.
26  Miner that the pipe had failed under similar circumstances in the past.

27
28

11

2737068.1

061875-412456

75.    In violation of this duty, Defendants negligently represented to A. Miner that ACIPCO's pipe was suitable for Zone-39, of acceptable quality, and that there were no previous negative issues relating to the use of ACIPCO's products.

76.    Contrary to the representations and omissions made to A. Miner, Mr. Huse had previously supplied similarly defective ACIPCO pipe to Arizona Earth Movers of Prescott in connection with the Pronghorn Ranch project in Prescott Valley. Kepner and ACIPCO had knowledge of previous occasions when ACIPCO's pipes failed much, if not exactly, like they failed on the Zone-39 Project.

77.    A. Miner reasonably relied on Defendants' false representations and omissions to its detriment.

78.    As a direct and proximate result of Defendants' negligent misrepresentations and omissions, A. Miner has sustained damages in the minimum amount of $350,000.

## JURY TRIAL DEMAND

78.    Plaintiff requests a trial by jury in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.    That this Court determine that A. Miner has the right to deduct all or any part of the damages resulting from any breach of contract from any part of the price still due under the purchase agreement between A. Miner and Kepner;

2.    That this Court determine that the two Verified Statement of Claims are not proper and are not enforceable;

3.    That this Court award Plaintiff compensatory damages in an amount to be proven at trial against all Defendants in connection with the Zone-39 Project;

4.    That this Court award Plaintiff compensatory damages in an amount to be proven at trial against Kepner in connection with the Groom Creek Project;

5.    That this Court award Plaintiff all natural and consequential damages incurred;

6.    That this Court award Plaintiff punitive damages against Defendants in an amount sufficient to punish and deter such conduct in the future;

12

2737068.1                                                                    061875-412456

7.  That this Court award Plaintiff its taxable costs to A.R.S. § 12-341;

8.  That this Court award Plaintiff its attorneys' fees pursuant to A.R.S. § 12-341.01; and

9.  For such other and future relief as this Court deems just and proper.

Dated this **30**<sup>th</sup> day of August, 2010.

POLSINELLI SHUGHART PC

By: /s/ David W. Lunn
    /s/ Kathryn A. Smetana
    David W. Lunn
    Kathryn A. Smetana
    Security Title Plaza
    3636 N. Central Ave., Suite 1200
    Phoenix, AZ 85012
    Attorneys for Plaintiff
    A. Miner Contracting, Inc.

13

2737068.1

061875-412456

1

2

## CERTIFICATE OF SERVICE

3      I hereby certify that on August 30th, 2010, I electronically transmitted the
foregoing document to the U.S. District Court Clerk's Office by using the CM/ECF

4   System for filing and sent electronically and via U.S. Mail the same to the following

5   CM/ECF registrants:

6   William W. Drury, Jr.                      Barry Willits
John A. Klecan                            HOLDEN WILLITS PLC
7   Denise J. Wacholz                         Two North Central Avenue, Suite 1700
RENAUD COOK DRURY MESAROS PA              Phoenix, Arizona 85004
8   One North Central Avenue, suite 900       bwillits@holdenwillits.com
9   Phoenix, Arizona 85004-4417               Attorneys for
dwacholz@rcdmlaw.com                      Defendant/Counterclaimant/Third-Party
10  jklecan@rcdmlaw.com                       Plaintiff Dana Kepner Company
11  wdrury@rcdmlaw.com
Attorneys for Defendant
12  Cast Iron Pipe Company

13

14  Burkeley N. Riggs                         Martin E. Burke
Thomas H. Wagner                          BURR & FORMAN, LLP
15  MOYE WHITE, LLP                           420 20th Street North, Suite 3400
16 Market Square, 6th floor                Birmingham, Alabama 35242
16  1400 16th Street                          205-458-5100
Denver, Colorado 80202-1486               mburke@burr.com
17  303-292-2900/Fax: 303-292-4510            Attorneys for Defendant
18  Burke.Riggs@moyewhite.com                 Cast Iron Pipe Company
Tom.Wagner@moyewhite.com
19  Attorneys for
20  Defendant/Counterclaimant/Third-Party
Plaintiff Dana Kepner Company

21

22

23

24

25

26

27

28

14

2737068.1                                                          061875-412456

1       I further certify that on August 30th, 2010, I electronically transmitted and sent
2  via U.S. Mail a courtesy copy of the foregoing document and the Notice of Electronic
Filing to the assigned Judge:

3

4  The Honorable Neal V. Wake
United State District Court District of Arizona
5  401 West Washington
Phoenix, Arizona 85003
6  Wake_chambers@azduscourts.gov

7                       /s/ David W. Lunn
8                       /s/ Kathryn A. Smetana

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2737068.1                                               061875-412456